# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**CLIFTON A. JACKSON, et al.,**

        **Plaintiffs,**

    v.

**OHIO STATE HIGHWAY PATROL, et al.,**

        **Defendants.**

Case No. 2:17-cv-163
Chief Judge Edmund A. Sargus, Jr.
Magistrate Judge Jolson

## REPORT AND RECOMMENDATION AND ORDER

This matter is before the Court on a variety of Defendants' dispositive motions (*see* Docs. 3, 8, 20, 21, 23, 27, 30, 33) and Plaintiffs' motions for leave to amend and supplement the complaint and obtain class action status (Doc. 24), and freeze all Defendants' assets (Doc. 26). For the reasons that follow, the undersigned **RECOMMENDS** that Defendants' motions be **GRANTED**, and Plaintiff's motions be **DENIED**.

## I.    PROCEDURAL BACKGROUND

Plaintiffs, a collection of twelve individuals proceeding *pro se*, filed the Complaint in this matter in the Franklin County Common Pleas Court on January 20, 2017, alleging various state-law torts and constitutional violations against seventeen defendants (local, state, and federal law enforcements officials, as well as private-practice attorneys) in their individual and official capacities. (*See generally* Docs. 1; 1-1). Plaintiffs seek "$29,411,764.205" in "compensatory, punitive, and monetary damages" against each Defendant. (*Id.* at 14–15). Only one Plaintiff, Clifton A. Jackson, an inmate at Lake Erie Correctional Institution, signed the Complaint. (*Id.* at 15).

On February 23, 2017, Defendant United States of America removed this action to the United States District Court for the Southern District of Ohio pursuant to 28 U.S.C. § 2679(d)(2). (Doc. 1). Currently pending before this Court are a number of dispositive motions: Defendant United States of America's Motion to Dismiss for Lack of Subject Matter Jurisdiction[1] (Doc. 3); Defendants Ohio State Highway Patrol Trooper Christopher Beyer, Sergeant Trooper Michael Trader, and Canine Argo's Motion for Judgment on the Pleadings (Doc. 8); Defendant Jack W. Bradley's Motion to Dismiss (Doc. 20); Defendants Laura Ann Dezort, Peter J. Gauthier, John R. Miraldi, Jennifer Riedthaler, Mary Slanczka, Dennis P. Will, and Edward Zaleski's Motion to Dismiss (Doc. 21); Defendant Paul A. Griffin's Motion for Judgment on the Pleadings (Doc. 23); Defendants Geno Taliano and Caitlin Szczepinski's Motion to Dismiss (Doc. 27); Defendant Paul Mancino, Jr.'s Motion for Judgment on the Pleadings (Doc. 30); and Defendant Mark Aufdenkampe's Motion for Judgment on the Pleadings, or, in the Alternative, For Summary Judgment as to All Claims (Doc. 33).

On April 14, 2017, Plaintiffs filed their "Answer to Any and All Defendant(s)' Motion to Dismiss for Lack of Subject Matter Jurisdiction 'And/Or' Fed. Civ. R. 12(b)(1) or 12(b)(6) Because Plaintiff(s) Have Pleaded Facts Which, if Proven, Would Entitle Them to Relief, Dismissal is Inappropriate, and Both Parties Have Demanded a Jury Trial to Settle Their Controversy!" (Doc. 25). Although several Defendants filed dispositive motions after Plaintiffs filed their seemingly all-inclusive Response (*see* Docs. 27, 30, 33), the Court construes Plaintiffs' "Answer" as responding to all dispositive motions. Replies were filed by some individual Defendants (*see* Docs 32, 35, 36), and the time for all other replies has expired. Accordingly, the dispositive motions are now ripe for this Court's review.

---

[1] On February 23, 2017, the day this action was removed, pursuant to 28 U.S.C. § 2679(d), the United States of America substituted for individual Defendants Geno Taliano and Caitlin Szczepinski with respect to the state-law tort claims that Plaintiffs allege in their Complaint. (*See* Doc. 2).

Also before the Court is Plaintiffs' Request for Leave to Amend the Complaint to Include Additional Injuries Which Have Happened Since the Date of the Pleading Sought to Be Supplemented And Obtain Class Action Status (Doc. 24), as well as Plaintiff's Motion to Freeze All Defendant(s)' Assets Pursuant to Fed. Civ. R. 64 (Doc. 26). Several Defendants filed Oppositions to these motions (*see* Docs. 34, 37, 38, 39), and Defendant Paul Mancino, Jr. filed a Motion to Join Defendant Paul A. Griffin's Opposition (Doc. 31), which is hereby **GRANTED**. Plaintiffs filed no reply. Plaintiffs' motions are thus also ripe for consideration.

## II. FACTUAL BACKGROUND

In their Complaint, Plaintiffs include a "claim" for each of the seventeen defendants that alleges, in some variation, the following:

> Plaintiff alleges that Defendant . . . while acting under the color of law conspired to deprive Plaintiffs of constitutional rights (equal protection & due process) under provisions of the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution by engaging in an overt act in furtherance of the conspiracy and as a direct result of Defendant's overt act, Plaintiff has suffered injuries of <u>intentional infliction of emotional distress, intentional discriminatory prosecution, intentional tort, consortium and intentional deprivation</u> of the above-stated state and federally protected rights to the Constitution of the United States and Laws. Said deprivations commencing on June 14, 2011 and continuing to date, which intentional acts were racially motivated and substantially certain to produce deprivation of Plaintiffs' constitutional rights. Defendant engaged in an overt act with malicious purpose, in bad faith, or in a wanton or reckless manner, which form the basis for stating Civ. R. 3; 42 U.S.C. §§ 1981, 1983, 1985(3), and 1986[.]

(*See e.g.*, Doc. 1-1 at 6) (emphasis in original). Other than those seventeen "claims," no other factual allegations are made within the Complaint.

However, upon review of the hundreds of pages of attachments that Plaintiffs filed with their Complaint in state court,[2] it appears that this action arises from a traffic stop of Mr. Jackson

---

[2] Defendant Griffin correctly noted in his Motion for Judgment on the Pleadings that although Plaintiff's Complaint became part of this Court's docket (*see* Doc. 4), the voluminous attachments were not appropriately transferred

performed by Ohio State Highway Patrol Trooper Christopher Beyer on June 14, 2011. (*See e.g.*, Doc. 23-1, PAGEID #: 212–217). During the stop, Canine Argo, who was under the control of Sergeant Trooper Michael Trader, performed a sniff test, alerted Sergeant Trader to the presence of drugs, and a subsequent search of Mr. Jackson's trunk revealed two kilograms of cocaine and drug packaging materials. (*See id.*; *see also* Doc. 27 at 2).

Mr. Jackson alleges in a 42-page affidavit attached to the Complaint that his trunk was illegally searched by Sergeant Trader and Trooper Beyer without his consent or a search warrant, he was illegally detained, and his arrest report was falsified. (Doc. 23-1, PAGEID #: 215–18). Further, Mr. Jackson alleges he was "prey" to Sergeant Trader and Trooper Beyer's practice of racial profiling, and Canine Argo only alerted to the presence of drugs because Sergeant Trader commanded him to do so. (*Id.*, PAGEID #: 240).

Following the traffic stop, Mr. Jackson was taken to a holding room in which he was interviewed by two DEA officers, Task Force Officer ("TFO") Geno Taliano and Special Agent ("SA") Caitlin Szczepinski. (Doc. 22-2, PAGEID #: 218). Mr. Jackson states the DEA officers then took possession of the alleged illegally obtained evidence (i.e. the drugs, his cell phones, and his money). (*Id.*). Mr. Jackson claims that, over the next several days, Trooper Beyer, TFO Taliano, and SA Szczepinski continuously attempted to discuss the drugs with him, despite having previously invoked his right to counsel and right to remain silent. (*Id.*, PAGEID #: 219).

On or about June 17 or 18, 2011, attorney Jack Bradley was retained to represent Mr. Jackson, under the verbal premise, according to Plaintiff's allegations, that no motion would be filed, nor should any hearings or the right to a speedy trial be waived, without his participation or approval. (*Id.*, PAGEID #: 219–20). Despite this, Mr. Jackson alleges, *inter alia*, that Mr.

---

following removal. Consequently, Defendant Griffin included the attachments as exhibits to his Motion. (*See* Docs. 23-2, 23-3).

Bradley filed motions, "waived the speedy trial clock," and requested continuances, all without his consent. (*Id.*, PAGEID #: 220–27). Further, Mr. Jackson expressed disagreement and dissatisfaction in how various portions of his case were handled and the perceived lack of communication from Mr. Bradley. (*Id.*, PAGEID #: 223–32).

In August 2011, Mr. Jackson was arraigned before Judge Edward Zaleski. (*Id.*, PAGEID #: 220). After Judge Zaleski's retirement in December 2012, his successor, Judge John Miraldi was assigned to Mr. Jackson's case. (*Id.*, PAGEID #: 233). In his affidavit, Mr. Jackson states that Judge Miraldi "exhibited a bias disposition misleading the record regarding the state appointment of counsel" during a pretrial hearing on November 25, 2013. (*Id.*). Further, Mr. Jackson alleges that Judge Miraldi "went on the record to allege past and/or present problems/issues exist(s)(ed) between [Mr. Jackson] and past counsel that never appeared before and/or existed on record." (*Id.*). Mr. Jackson again alleged Judge Miraldi had a "bias disposition" in denying his motion to dismiss and motion to preclude. (*Id.*, PAGEID #: 237).

On November 18, 2013, attorney Mark Aufdenkampe was appointed to represent Mr. Jackson in place of Mr. Bradley. (*Id.*, PAGEID #: 233). Mr. Jackson alleges that Mr. Aufdenkampe failed to file a "critical motion to dismiss and motion to preclude," that he was then forced to draft himself, and failed to object during trial as instructed. (*Id.*, PAGEID #: 236–37, 240). Additionally, Mr. Jackson states that on his second day of trial, he arrived late due to weather and traffic conditions, of which he informed Mr. Aufdenkampe, yet Mr. Aufdenkampe failed to notify Judge Miraldi, who thus began the trial without Mr. Jackson present. (*Id.*, PAGEID #: 239).

During trial, Mr. Jackson alleges that Trooper Beyer and Sergeant Trader gave perjured testimony, "prompting Civil Rights violations, Constitutional Rights Violations, judicial

5

misconduct, prosecutorial misconduct, and also, violations of Due Process and Equal Protection Clauses." (*Id.*, PAGEID #: 249). Mr. Jackson was ultimately convicted in the Lorain County Court of Common Pleas, and sentenced to eleven years imprisonment. (*Id.*, PAGEID #: 240; Doc. 27 at 2).

During the course of his appeal, Mr. Jackson alleges that he was "not comfortable" with his appellate counsel, Paul Griffin, because his office was next door to Mr. Bradley's and he did "not trust anyone whom Judge John R. Miraldi appointed." (*Id.*, PAGEID #: 241–42). Further, Mr. Jackson states that he sent a detailed document addressing what he believed to be civil and constitutional rights violations to Mr. Griffin and received no response. (*Id.*, PAGEID #: 242).

Mr. Jackson retained subsequent appellate counsel, Mr. Paul Mancino, Jr., but he allegedly "failed to communicate with [him] through visits, postage (mail) correspondence, etc." (*Id.*, PAGEID #: 242; *see also id.*, PAGEID #: 246–48). For example, Mr. Jackson states that he sent him "various detailed letters containing specific instructions" regarding his appeal that Mr. Mancino never responded to, and he ultimately filed the appellate brief without consulting with Mr. Jackson or allowing him an opportunity for review. (*Id.*, PAGEID #: 243–45). Further, Mr. Jackson repeatedly laments that he never had an open or direct line of communication with Mr. Mancino, despite his best efforts (*id.*, PAGEID #: 245–50).

On appeal, the Ninth District Court of Appeals upheld the conviction and sentence, rejecting Mr. Jackson's contentions that he was denied due process of law. (*Id.*). Mr. Jackson confusingly states that Mr. Mancino failed to inform him he could appeal this decision to the Supreme Court of Ohio, yet in the next paragraph of his affidavit he states that Mr. Mancino sent him a letter informing him that he had 45 days to appeal to the Ohio Supreme Court and he should contact the State of Ohio Public Defenders office for help. (*Id.*, PAGEID #: 250).

On August 17, 2015, the State of Ohio Public Defenders office allegedly chose not to appoint Mr. Jackson representation, and instead sent him a *pro se* packet on how to file a delayed appeal to the Ohio Supreme Court. (*Id.*, PAGEID #: 251). On October 28, 2015, the Supreme Court of Ohio denied Mr. Jackson's motion for a delayed appeal. (*Id.*, PAGEID #: 252).

Mr. Jackson's affidavit ends with the following conclusion:

> The points made herein, not only supports blatant violations of the 4th amendment (under the "Fruit of the Poisonous Tree Doctrine"), not limited to with respect to the illegal actions of Ohio State Troopers Christopher Beyer, Michael Trader, and K-9 Argo individually and collectively. It also supports blatant violations of the 6th amendment (under effective assistance of counsel, and rights to a fair trial) with respect to the ineffective representation of counsel at all levels, not limited to (former retained attorney) Jack Bradley, (Court appointed attorney) Mark Aufdenkampe, (court appointed appeals attorney) Paul Griffin, and (retained appeals attorney) Paul Mancino Jr., individually and collectively, It also supports blatant violation of the 6th amendment (due process, right to a fair trial) with respect to the actions of judicial bias of suppression hearing Judge – Edward Zaleski (retired) and trial Judge – John R. Miraldi, individually and collectively. It also supports blatant violations of the 6th amendment (under due process, right to a fair trial), with respect to the actions of prosecutorial misconduct by the Lorain County Prosecutor's Office, and the Assistant Prosecuting Attorney's whom represented the State of Ohio throughout the life of this case individually and collectively.

(*Id.*, PAGEID #: 253).

### III. STANDARD

The Defendants filed seven dispositive motions (*see* Docs. 8, 20, 21, 23, 27, 30, 33) structured as either motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) (*see* Docs. 20, 21, 27), or motions for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) (*see* Docs. 8, 23, 30, 33).

The only difference between Rule 12(c) and Rule 12(b)(6) is the timing of the motion to dismiss, and thus, the motions are determined under the same standard of review. *See Hunter v.*

*Ohio Veterans Home*, 272 F. Supp. 2d 692, 694 (N.D. Ohio 2003) (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 11 (6th Cir. 1987)).

Federal Rule of Civil Procedure 12(b)(6) requires that a complaint "state a claim to relief that is plausible on its face" to survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 663-64, 678 (2009); *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007). In reviewing the complaint, a court must construe it in favor of the plaintiff and accept all well-pleaded factual allegations as true. *Twombly*, 550 U.S. at 57. "A claim has facial plausibility when the plaintiff pleads *factual content* that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (emphasis added) (citing *Twombly*, 550 U.S. at 556).

On the other hand, a complaint that consists of "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" is insufficient. *Twombly*, 550 U.S. at 555); *see also Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) (plaintiff must give specific, well-pleaded facts, not just conclusory allegations). In other words, while "detailed factual allegations" are not required under Fed. R. Civ. P.8(a)(2)'s "short and plain statement" rule, the law "demands more than [Plaintiffs'] unadorned, the-defendant-unlawfully-harmed-me allegation." *Iqbal*, 556 U.S. at 677-78, *quoting Twombly*, 550 U.S. at 555 (citing to *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

Although *pro se* complaints are to be construed liberally, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), "basic pleading essentials" are still required. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). Stated differently, "[t]he requirement for liberal construction . . . does not translate to ignoring a clear failure in the pleading to allege facts which set forth a cognizable claim." *Kidd v. Neff*, No. 1:12-cv-40, 2012 WL 4442526, at *2 (E.D. Tenn. Sept. 25, 2012) (dismissing *pro se*

plaintiff's "incredibly vague" *Bivens* complaint); *see also Smith v. Breen*, No. 09-2770, 2010 WL 2557447, at *6 (W.D. Tenn. June 21, 2010) (collecting cases). Ultimately, to avoid dismissal, Mr. Jackson's Complaint "must contain either direct or inferential allegations with respect to all the material elements" of his claims. *Wittstock v. Mark A. Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003) (citing *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003)).

## IV. DISCUSSION

As an initial matter, and as several Defendants noted (Doc. 8 at 2; Doc. 20 at 5; Doc. 23 at 3), Mr. Jackson is the only Plaintiff who signed the Complaint. Pursuant to Fed. R. Civ. P. 11(a), when two or more plaintiffs are proceeding as co-plaintiffs, each plaintiff must sign the complaint. *Shannon v. Johnson*, No. 3:12-CV-01318, 2013 WL 1564223, at *1 (M.D. Tenn. Apr. 12, 2013). Further, to the extent that Mr. Jackson "is seeking to bring a class action on behalf of himself and others similarly situated, courts have repeatedly held that 'pro se prisoners cannot adequately represent a class.'" *Peters v. Osborne*, No. 4:14CV-P2-M, 2014 WL 1379340, at *2 (W.D. Ky. Apr. 8, 2014) (citing *Ziegler v. Michigan*, 59 F. App'x 622, 624 (6th Cir. 2003). Thus, Mr. Jackson is precluded from representing anyone other than himself in this action and the Court will consider the alleged claims as applied to him only. *See Moore v. Warren*, No. 13-CV-11831, 2014 WL 1464404, at *3 (E.D. Mich. Apr. 15, 2014).

### A. Plaintiff's Federal Claims

In addressing Mr. Jackson's claims against the seventeen Defendants, the undersigned considers both the Complaint and the attached exhibits. *See Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) ("When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long

9

as they are referred to in the Complaint and are central to the claims contained therein."). Upon review, however, Mr. Jackson's federal claims consist only of conclusory allegations and boilerplate legalese.

### 1. *Ohio State Highway Patrol and Troopers* (Doc. 8)

Mr. Jackson alleges that the Ohio State Highway Patrol, Trooper Christopher Beyer, Sergeant Trooper Michael Trader, (collectively, "the Highway Patrol Defendants"), and Canine Argo violated his rights under 42 U.S.C. §§ 1981, 1983, 1985(3), and 1986. Based on Mr. Jackson's affidavit, the Court presumes these actions are brought as a result of the alleged racial profiling. As an initial matter, Canine Argo cannot be sued, for only "persons" may be sued under these sections.

Addressing first the § 1981 claim, this section "prohibits racial discrimination in the making of contracts and affords a federal remedy against racial discrimination in private employment." *Anthony v. BTR Auto. Sealing Sys., Inc.*, 339 F.3d 506, 512 (6th Cir. 2003). To establish a § 1981 claim, Plaintiff must show (1) he is a member of a racial minority, (2) the defendant(s) intended to discriminate on the basis of race, and (3) the discrimination concerned one or more of the activities enumerated in Section 1981. *Burton v. Plastics Research Corp.*, 134 F. Supp. 2d 881, 887 (E.D. Mich. 2001) (citing *Johnson v. Harrell*, No. 97–5257, 1998 WL 57356, at *2 (6th Cir. Feb. 2, 1998)). Although Mr. Jackson accuses the Highway Patrol Defendants of racial profiling, he fails to allege that he is a member of a racial minority or that the discrimination concerned activities enumerated in § 1981.

Turning next to the § 1983 claim, Mr. Jackson must present evidence that (1) there was a deprivation of a right secured by the Constitution and (2) the deprivation was caused by a person acting under color of state law. *See e.g.*, *Wittstock*, 330 F.3d at 902. "Section 1983 'is not itself

a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Noffsinger v. Landers*, 196 F. Supp. 3d 746, 751 (N.D. Ohio 2016) (quoting *Albright v. Oliver,* 510 U.S. 266, 271 (1994)). Here, Mr. Jackson failed to state, with sufficient factual allegations, that he has actually been deprived of a federally protected right. While he vaguely states his constitutional rights have been violated, he points to no specific factual scenarios for the Court to rely on.

As to Mr. Jackson's § 1985 claim, Plaintiff must prove (1) a conspiracy involving two or more persons (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws and (3) an act in furtherance of the conspiracy (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States. *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839 (6th Cir. 1994). Further, Plaintiff must also establish that the conspiracy was motivated by a class-based animus. *Id.* And this class "must possess the characteristics of a discrete and insular minority, such as race, national origin, or gender." *Haverstick Enter., Inc. v. Fin. Fed. Credit, Inc.*, 32 F.3d 989, 994 (6th Cir. 1994) (citing *Hicks v. Resolution Trust Corp.*, 970 F.2d 378, 382 (7th Cir. 1992)). As previously stated, Mr. Jackson has failed to allege he belongs to any such protected class. Further, Mr. Jackson's allegations of a conspiracy are limited to simply stating a conspiracy existed. This is not enough.

Finally, Mr. Jackson's failure to state a claim for relief under § 1985 is fatal to his claims brought pursuant to § 1986 because a § 1986 claim is dependent upon a viable § 1985 claim. *Amadasu v. The Christ Hosp.*, 514 F.3d 504, 507 (6th Cir. 2008) (citing *Bartell v. Lohiser*, 215 F.3d 550, 560 (6th Cir. 2000); *Haverstick Enters., Inc.*, 32 F.3d at 994). Consequently, Mr. Jackson has failed to plead more than a formulaic recitation of the elements of various causes of

action as to the Highway Patrol Defendants. It is therefore **RECOMMENDED** that the Highway Patrol Defendants' Motion (Doc. 8) be **GRANTED**.

*2. Lorain County Prosecutor, Assistant Prosecutors, and Judges* (Doc. 21)

Mr. Jackson alleges the same claims against the Lorain County Prosecutors and Assistant Prosecutors—Dennis P. Will, Jennifer M Riedthaler, Peter J. Gauthier, Laura Ann Dezort, and Mary Slanczka (collectively, "the Prosecutorial Defendants")—as he did against the Highway Patrol Defendants, with the addition of a § 1988 claim. However Mr. Jackson fails to allege any facts that identify any injured cause by a specific act taken by any of the Prosecutorial Defendants. Indeed, Mr. Will and Ms. Riedthaler were not even mentioned in Mr. Jackson's affidavit of facts, and the other three were mentioned only in describing the duties they performed. (Doc. 23-2, PAGEID #: 220 ("I received a copy of the motion of discovery reply authored by Assistant Prosecuting Attorney Laura Ann Dezort"); *id.*, PAGEID #: 238 (explaining that Assistant Prosecutor Gauthier "made an oral motion for Trooper Michael Trader to be able to sit at the prosecution's table as a representative"); *id.*, PAGEID #: 246 ("Assistant Prosecuting Attorney, Mary Slanczka [], filed the appellee Brief, requesting oral arguments.")). Mr. Jackson vaguely alleges "prosecutorial misconduct" at the end of his affidavit, but provides no facts or basis for the allegations.

As to Judge Edward Zaleski and Judge John Miraldi (collectively, "the Judicial Defendants"), again Mr. Jackson fails to allege any overt act, or set of facts, that could support a constitutional claim. Even construing the Complaint most favorably to Mr. Jackson, the entirety of his argument against the Judges is that they showed "bias" against him when they ruled against him on various motions, but this alone is not enough to support a claim.

Overall, these bare assertions fail to state a claim with facial plausibility. Moreover, both the Judicial Defendants and the Prosecutorial Defendants are immune from damages in civil lawsuits arising from their judicial and prosecutorial acts in Mr. Jackson's underlying matter. *See e.g.*, *Ireland v. Tunis*, 113 F.3d 1435, 1443 (6th Cir. 1997) ("Absolute or 'quasi-judicial' immunity derived from common-law immunity accorded to judges has been extended to prosecutors when the prosecutorial activity is intimately associated with the judicial phase of the criminal process.") (internal quotations omitted). Accordingly, it is **RECOMMENDED** that the Judicial Defendants and the Prosecutorial Defendants' Motion to Dismiss (Doc. 21) be **GRANTED.**

      *3. DEA Agents* (Doc. 27)

Mr. Jackson also brought claims pursuant to 42 U.S.C. §§ 1981, 1983, 1985(3), and 1986 against two DEA agents, TFO Taliano and SA Szczepinski (collectively, "the DEA Defendants"). As was the case with the Prosecutorial Defendants, it is unclear what conduct Mr. Jackson is challenging, for Plaintiff alleges only that they interviewed Mr. Jackson, gathered the evidence, and asked him about the drugs found on him after he had been mirandized. Even if this were taken as true, Mr. Jackson does not allege that he made any statements post-Miranda that now should be suppressed. Accordingly, it is again uncertain what overt act the DEA Defendants engaged in that violated Plaintiff's rights. Further, the DEA Defendants point out in their Motion that Mr. Jackson alleges that they continue to deprive him of his constitutional rights, but he offers no explanation for what continued violation he is referring too.

Moreover, the DEA Defendants assert that they are entitled to qualified immunity. (Doc. 27 at 7). For a plaintiff "to overcome a qualified immunity defense, [he] must show that his [] *own* rights were violated, and that the violation was committed *personally* by the defendant[s]."

13

*Robertson v. Lucas*, 753 F.3d 606, 615 (6th Cir. 2014) (emphasis in original). Once a defendant has raised qualified immunity, the plaintiff bears the burden of showing that the defendant is not entitled to qualified immunity. *See e.g.*, *Everson v. Leis*, 556 F.3d 484, 494 (6th Cir. 2009). Here, Mr. Jackson has not met that burden, as he offers only legal conclusions, with no facts supporting a constitutional violation. Thus, it is **RECOMMENDED** that the DEA Defendants' Motion to Dismiss (Doc. 27) be **GRANTED**

    *4. Mr. Jackson's Attorneys (Doc. 20, 23, 30, 33)*

The Complaint alleges that each of Mr. Jackson's attorneys—Jack Bradley, Mark Aufdenkampe, Paul Griffin, and Paul Mancino (collectively, "the Attorney Defendants")—deprived Plaintiff of his "constitutional rights (right to counsel and fair trial)" while acting under "the color of law" pursuant to 42 U.S.C. §§ 1981, 1983, 1985(3), and 1986, and 1988. However, "[i]n order for a private entity to 'act under color of state law' for § 1983 purposes, 'its actions [must] so approximate the state action that they may be fairly attributed to the state.'" *Probst v. Cent. Ohio Youth Ctr.*, 511 F. Supp. 2d 862, 867 (S.D. Ohio 2007) (citing *Lansing v. City of Memphis*, 202 F.3d 821, 828 (6th Cir. 2000)). Here, it cannot be said that Mr. Jackson's attorneys' actions approximated to state action such that they could be considered state actors. It is thus **RECOMMENDED** that the Attorney Defendants' Motions for Judgment on the Pleadings (Doc. 23, 30, 22) and Motion to Dismiss (Docs. 20) be **GRANTED.**

**B. Plaintiff's State-Law Claims**

    *1. Defendant USA's Motion to Dismiss for Lack of Jurisdiction (Doc. 3)*

Defendant United States of America moves to dismiss itself from this action under Fed. R. Civ. P. 12(b)(1), because it alleges that Plaintiffs did not exhaust administrative remedies under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-2680, before filing the

Complaint. (Doc. 3). Consequently, the United States argues this Court lacks subject matter jurisdiction over Mr. Jackson's state law tort claims. (*Id.*).

The United States is immune from suit unless Congress specifically waives sovereign immunity in statutory text. *United States v. Bormes*, 133 S.Ct. 12, 16 (2012) (quoting *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33–34 (1992)); *FAA v. Cooper*, 566 U.S. 284, 290 (2012) (collecting cases). Because sovereign immunity is jurisdictional in nature, the "'terms of [the United States'] consent to be sued in any court define that court's jurisdiction to entertain the suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994) (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)).

The Federal Tort Claims Act is a limited waiver of sovereign immunity for certain state law torts committed by federal employees. 28 U.S.C. § 1346(b); *see also FDIC v. Meyer*, 510 U.S. at 475–476. The FTCA applies to Mr. Jackson's state law tort claims because the DEA Defendants have been certified as acting within the scope of their employment at the time of the events giving rise to Plaintiff's claims. (*See* Doc. 1-3). One of the conditions of the FTCA's limited waiver of sovereign immunity is that the claimant must completely exhaust administrative remedies with the agency that gave rise to the claim before filing a complaint in district court. Here, the DEA has no record that Mr. Jackson presented an administrative tort claim. (*See* Doc. 3-1*)*. Consequently, because Mr. Jackson has failed to present an administrative tort claim, this Court does not have subject matter jurisdiction over the United States. It is therefore **RECOMMENDED** that the United States of America's Motion to Dismiss (Doc. 3) be **GRANTED**.

*2. Remaining State-Law Claims Against Other Defendants*

To the extent Mr. Jackson has any remaining claims against the other Defendants (like intentional infliction of emotional distress and "consortium"), they arise under state law. However, because Mr. Jackson's federal-question claims fail, *see supra*, the Court has no hook for supplemental jurisdiction. When all federal claims are dismissed before trial, state-law claims "generally should be dismissed as well." *Brooks v. Rothe*, 577 F.3d 701, 709 (6th Cir. 2009). Consequently, the undersigned **RECOMMENDS** dismissing the remaining state-law claims against all Defendants. *See Mathis v. Doctor's Hosp. (West)*, No. 2:12-cv-358, 2012 U.S. Dist. LEXIS 80190 *9–10 (S.D. Ohio June 11, 2012) (adopting recommendation not to exercise supplemental jurisdiction where federal claims failed).

**C. Plaintiff's Motion For Leave to Amend, Supplement, and Obtain Class Action Status (Doc. 24)**

Mr. Jackson seeks leave to amend his Complaint, supplement his Complaint to "include additional injuries which have happened since the date of the pleading sought to be supplemented," and to obtain class action status. (Doc. 24). As previously discussed, *pro se* prisoners are not able to represent fairly a class, *see Palasty v. Hawk*, 15 F. App'x 197, 200 (6th Cir. 2001), thus, it is **RECOMMENDED** that the portion of the Motion dealing with class status is **DENIED**. As to the remainder of the Motion, "[t]he standard for granting leave to supplement under Rule 15(d) is identical to the standard governing leave to amend under Rule 15(a)." *Kanoski v. Sterling Paper, Co.*, No. 209CV00439, 2010 WL 3910483, at *1 (S.D. Ohio Oct. 4, 2010) (citing *Spies v. Voinovich*, 48 F. App'x 520, 527 (6th Cir. 2002)).

Although courts ordinarily will not consider the merits of a proposed amended complaint in ruling on a motion for leave to amend or supplement, the Sixth Circuit has held that "the district court may deny a motion for leave to amend a complaint if such complaint, as amended,

16

could not withstand a motion to dismiss.'" *Kanoski*, 2010 WL 3910483, at *2 (quoting *Neighborhood Dev. Corp. v. Advisory Council on Historic Preservation*, 632 F.2d 21, 23 (6th Cir. 1980)). In other words, "if there is no set of facts which could be proved under the amendment which would constitute a valid and sufficient claim, leave should be denied. *Id.* (citing *Cooper v. American Employers' Ins. Co.*, 296 F.2d 303, 307 (6th Cir. 1961)).

In his proposed amended complaint, as was the case with the original complaint, Mr. Jackson alleges conclusory allegations of racial discrimination, judicial bias, and prosecutorial misconduct which are unsupported by material facts. *See Lynch-Bey v. Caruso*, No. CIV.A. 05-72378, 2007 WL 1775388, at *2 (E.D. Mich. June 20, 2007). Accordingly, Mr. Jackson's proposed amended complaint contains neither direct, nor inferential, allegations with respect to all the material elements of his claims. Thus, the undersigned believes Mr. Jackson's amendment is futile, and because the Court "is not required to entertain frivolous or meritless amendments," *id.*, it is **RECOMMENDED** that Plaintiff's Motion to Amend (Doc. 24) be **DENIED.**

### D. Plaintiff's Motion to Freeze All Defendants' Assets (Doc. 26)

Mr. Jackson also moves to freeze all Defendants' assets pursuant to Fed. R. Civ. P. 64. (Doc. 26). Specifically, he argues that because he has a civil action pending, which is requesting damages, his Motion should be granted "to secure satisfaction of the potential judgment." (*Id.* at 2).

Federal Rule of Civil Procedure 64 provides that during the course of civil litigation in federal court, "all remedies providing for seizure of person or property for the purpose of securing satisfaction of the judgment ultimately to be entered in the action are available under the circumstances and in the manner provided by the law of the state in which the district court is

held . . . ." Fed. R. Civ. P. 64(a). Under Ohio law, a writ of attachment is available against property "other than personal earnings" in a civil action seeking money damages "at or after its commencement" on various grounds. Ohio Rev. Code § 2715.01. Such a writ may only be issued, however, where it is "likely" that the plaintiff will prevail on its claims. Ohio Rev. Code § 2715.011(A); *see also Enable Healthcare, Inc. v. Cleveland Quality Healthnet, LLC*, No. 1:16-cv-2395, 2016 WL 6821980, at *3 (N.D. Ohio Nov. 18, 2016).

As explained above, Plaintiff has failed to state a claim for which relief can be granted, meaning he is not likely to prevail such that a writ of attachment is appropriate. Accordingly, it is **RECOMMENDED** that Plaintiff's Motion to Freeze All Defendants' Assets (Doc. 26) be **DENIED**.

## V. CONCLUSION

For the reasons set forth above, it is **RECOMMENDED** that Defendants' Motions (Docs. 3, 8, 20, 21, 23, 27, 30, 33) be **GRANTED**, and Plaintiff's Motions (Doc. 24, 26) be **DENIED.** Further, Defendant Paul Mancino, Jr.'s Motion to Join Defendant Paul A. Griffin's Opposition (Doc. 31), is **GRANTED**.

### Procedure on Objections to Report and Recommendation

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further

evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.


Date: June 28, 2017                    /s/Kimberly A. Jolson
                                       KIMBERLY A. JOLSON
                                       UNITED STATES MAGISTRATE JUDGE