UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

CLIFTON A. JACKSON, et al.,

    Plaintiffs,

v.

OHIO STATE HIGHWAY PATROL, et al.,

    Defendants.

Case No. 2:17-cv-163
CHIEF JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Kimberly A. Jolson

## OPINION AND ORDER

This matter is before the Court on Plaintiff Clifton A. Jackson's Objection [ECF No. 41] to the United States Magistrate Judge's recommendation [ECF No. 40] that the Court grant Defendants' various dispositive motions [ECF Nos. 3, 8, 20, 21, 23, 27, 30, 33].[1] For the following reasons, Jackson's Objection is **OVERRULED**.

### I.

Jackson is one of twelve pro se Plaintiffs in this action. (Compl. at 1–2 [ECF No. 4].) He is the only Plaintiff who signed the Complaint, and he is the only Plaintiff who has objected to the Magistrate Judge's Report and Recommendation. (*Id.* at 15–17; Obj. at 1 [ECF No. 41].) Plaintiffs have sued the Ohio State Highway Patrol; State Trooper Christopher Beyer; Sergeant Trooper Michael Trader; Canine Argo; Drug Enforcement Administration ("DEA") Task Force Officer Geno Taliano; DEA Special Agent Caitlin Szczepinski;[2] Lorain County Prosecutor Dennis P. Will; Lorain County Assistant Prosecutors Mary Slanczka, Jennifer M. Riedthaler,

---

[1] The Magistrate Judge also recommended that the Court deny Jackson's motions for leave to amend and supplement the Complaint and obtain class action status [ECF No. 24] and freeze all Defendants' assets [ECF No. 26]. Jackson does not object to these recommendations. (*See* Obj. at 1–2 [ECF No. 41].)

[2] On February 23, 2017, the United States of America was substituted for Defendants Taliano and Szczepinski with respect to Plaintiffs' state-law tort claims. (Notice of Substitution at 1–2 [ECF No. 2].)

Peter J. Gauthier, and Laura Ann Dezort; Attorneys Jack W. Bradley, Mark A. Aufdenkampe, Paul A. Griffin, and Paul A. Mancino, Jr.; Retired Judge Edward Zaleski; and Judge John R. Miraldi. (*See* Compl. at 2–4.) Plaintiffs assert seventeen claims, each of which essentially alleges that

> Defendant . . . while acting under the color of law conspired to deprive Plaintiffs of constitutional rights (equal protection & due process) under provisions of the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution by engaging in an overt act in furtherance of the conspiracy and as a direct result of Defendant's overt act, Plaintiffs ha[ve] suffered injuries of intentional infliction of emotional distress, intentional discriminatory prosecution, intentional tort, consortium and intentional deprivation of the above-stated state and federally protected rights to the Constitution of the United States and Laws. Said deprivations commencing on June 14, 2011 and continuing to date, which intentional acts were racially motivated and substantially certain to produce deprivation of Plaintiff's constitutional rights. Defendant engaged in an overt act with malicious purpose, in bad, faith, or in a wanton or reckless manner, which form the basis for stating Civ. R. 3; 24 U.S.C. §§ 1981, 1983, 1985(3), and 1986 .
> . . .

(*Id.* at 6 (emphasis deleted).)

The Complaint does not contain any factual allegations. Rather, the facts underlying the Complaint are conveyed through a series of attachments, which includes, most notably, an affidavit signed by Jackson. (*See* Ex. 2 to Griffin's Mot. for J. on the Pleadings [ECF No. 23-2].) A review of the affidavit reveals that Plaintiffs' claims stem from an alleged racially motivated conspiracy involving the individuals who had a role in Jackson's arrest, prosecution, and criminal defense. (*See* Compl. at 6–13; Jackson Aff. at PageID 240 [ECF No. 23-2].)

Jackson was pulled over by Ohio State Highway Patrol Trooper Beyer on June 14, 2011. (*See* Jackson Aff. at PageID 212.) Jackson was arrested after canine Argo, a drug detection dog working with Sergeant Trooper Trader, alerted to the presence of drugs in Jackson's vehicle and a search revealed two kilograms of cocaine and drug packaging material. (*See id.* at PageID 212–17.) Beyer and Trader allegedly provided inaccurate testimony regarding the traffic stop. (*See id.*

at PageID 213, 236, 238–39.) And Trader purportedly instructed Argo to alert at the driver-side rear door of Jackson's vehicle. (*See id.* at PageID 214–15.) According to Jackson, he fell prey to Beyer and Trader's alleged racial profiling. (*Id.* at PageID 240.)

DEA Task Force Officer Taliano and DEA Special Agent Szczepinski attempted to interview Jackson after his arrest. (*See* Jackson Aff. at PageID 218.) Beyer, Trader, Taliano, and Szczepinski purportedly attempted to discuss with Jackson the drugs found in his car despite Jackson's previous invocation of his right to remain silent. (*See id.* at PageID 216–19.)

Jackson was represented at the trial level by Attorney Bradley and, later, by Attorney Aufdenkampe. (*See* Jackson Aff. at PageID 219, 233.) Bradley allegedly failed to follow instructions and communicate with Jackson, and Aufdenkampe, among other things, purportedly neglected to file a motion, object at trial as instructed, and inform the court that Jackson was running late to trial one day because of vehicle troubles. (*See id.* at PageID 219–37.)

Judge Zaleski arraigned Jackson, and Judge Miraldi assumed the case after Judge Zaleski's retirement (*See* Jackson Aff. at PageID 220, 233.) Judge Miraldi purportedly "exhibited a bias disposition" and made misleading statements on the record. (*See id.* at PageID 233, 237.)

Jackson was eventually convicted and sentenced to eleven years imprisonment. (Jackson Aff. at PageID 240.) Attorney Griffin was appointed as Jackson's appellate counsel. (*Id.*) Jackson was not comfortable with Griffin because Griffin's office was located "just [a]bout next door" to Attorney Bradley's, because Jackson did "not trust anyone whom Judge John R. Miraldi appointed," and because Griffin purportedly failed to communicate with Jackson. (*Id.* at PageID 241–42.) Jackson later retained Attorney Mancino as his appellate counsel. (*See id.* at PageID

3

243.) Mancino allegedly neglected to work on the appeal and communicate with Jackson. (*See id.* at PageID 243–50.)

Ohio's Ninth District Court of Appeals affirmed Jackson's conviction and sentence. (*See* Jackson Aff. at PageID 248–50.) Mancino allegedly informed Jackson that he had 45 days to appeal the Ninth District's decision to the Ohio Supreme Court and that Jackson should contact the Office of the Ohio Public Defender for help. (*Id.* at PageID 250.) The Public Defender's office allegedly chose not to appoint Jackson representation and, instead, sent him a "Pro Se Packet" on how to file a delayed appeal to the Ohio Supreme Court. (*Id.* at PageID 251.) Jackson moved to file a delayed appeal, but the Ohio Supreme Court denied the motion. (*Id.* at PageID 252.)

Defendants have each requested dismissal or judgment on the pleadings in response to Plaintiffs' claims. (*See generally* Defs.' Mots. [ECF Nos. 3, 8, 20, 21, 23, 27, 30, 33].)

In her Report and Recommendation, the Magistrate Judge treated Plaintiffs' claims as though they were only brought by Jackson. (*See* Report & Recommendation at 9 [ECF No. 40].) The Magistrate Judge only addressed Jackson's claims because he is the only Plaintiff who signed the Complaint. *See* Fed. R. Civ. P. 11(a) ("Every pleading, written motion, and other paper must be signed by . . . a party personally if the party is unrepresented.").

The Magistrate Judge first considered Jackson's federal law claims. Those claims should be dismissed, she determined, because they are insufficiently pleaded and consist "only of conclusory allegations and boilerplate legalese." (Report & Recommendation at 10.) The Magistrate Judge also noted that some of the claims fail for additional reasons: the prosecutors and judges are immune from damages in civil lawsuits arising from their judicial and prosecutorial acts; Jackson has not met his burden of showing why the DEA Defendants are not

4

entitled to qualified immunity; and Jackson has not plausibly alleged that his attorneys were acting under the color of state law, which would be required for the attorneys to be held liable under some of Jackson's federal claims. (*Id.* at 13–14.)

The Magistrate Judge has also recommended dismissing Jackson's state-law claims. The state-law claims against the United States fail, she concluded, because Jackson has not alleged administrative exhaustion—a prerequisite to bringing suit under the Federal Tort Claims Act. (Report & Recommendation at 14–15.) And the state-law claims against the other Defendants should be dismissed because the dismissal of Jackson's federal law claims would deprive the Court of a reason to continue exercising supplemental jurisdiction. (*Id.* at 16.)

Jackson now objects to the recommendation that his claims be dismissed.

## II.

### A. Standard of Review

If a party objects within the allotted time, the district court must make a de novo determination of those portions of the report and recommendation to which objection is made. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3); *see United States v. Curtis*, 237 F.3d 598, 602–03 (6th Cir. 2001). The Court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3).

Motions to dismiss and motions for judgment on the pleadings, brought under Federal Rules of Civil Procedure 12(b)(6) and 12(c), respectively, are analyzed under the same standard. *See Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 761 (6th Cir. 2006). Under Rules 12(b)(6) and 12(c), a court will dismiss an action that fails to state a claim upon which relief may be granted. *See id.* Such an action will be dismissed where "there is no law to support the claims made" or

5

where "the facts alleged are insufficient to state a claim." *Stew Farm, Ltd. v. Natural Res. Conservation Serv.*, No. 2:12-cv-299, 2013 WL 4517825, at *3 (S.D. Ohio Aug. 26, 2013) (citing *Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697, 702 (6th Cir. 1978)). When considering a motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff and accept all of the complaint's well-pleaded factual allegations as true. *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998).

A complaint will survive a motion to dismiss if it contains sufficient factual allegations to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint will not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement'" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* (quoting *Twombly*, 550 U.S. at 557). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

The Court may consider the complaint and any accompanying exhibits when deciding a motion to dismiss. *See Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). When deciding a motion for judgment on the pleadings, the Court may also consider the answer. *See McGath v. Hamilton Local Sch. Dist.*, 848 F. Supp. 2d 831, 836 (S.D. Ohio 2012).

When, as here, a litigant proceeds pro se, the Court construes his pleadings liberally and holds them to less stringent standards than pleadings drafted by lawyers. *Haines v. Kerner*, 404

U.S. 519, 520–21 (1972). Pro se litigants, however, must still comply with the procedural rules that govern civil cases. *McNeil v. United States,* 508 U.S. 106, 113 (1993).

**B. Jackson's Objection**

Jackson objects to the recommended dismissal of his claims against Trooper Beyer; Sergeant Trooper Trader; Prosecutor Will; Assistant Prosecutors Riedthaler and Gauthier; Attorneys Bradley, Aufdenkampe, and Mancino; Retired Judge Zaleski; and Judge Miraldi. (Obj. at 1–2, 10–11 [ECF No. 41].) Jackson's Objection does not critique the Magistrate Judge's legal analysis; rather, Jackson highlights the allegations that purportedly state a claim against these Defendants.

Jackson contends that Beyer committed perjury by providing testimony about Jackson's arrest that was inconsistent with the dash camera video of the incident. (Obj. at 2–3, 5.) Jackson avers that Trader gave false testimony and improperly directed canine Argo to alert to the presence of drugs in Jackson's vehicle. (*Id.* at 6–7.) Jackson insists that Riedthaler "is the author and director of [this] perjured testimony" because she allegedly reviewed Beyer's dash camera video and knew that the troopers' testimony was in conflict with the video. (*Id.* at 7.) Jackson argues that Gauthier "coached and directed the [troopers'] false (perjured) testimonies" and "derailed [Jackson's] *Brady* requests by giving partial discovery." (*Id.* at 8.) Jackson claims that Will condoned Riedthaler and Gauthier's actions. (*Id.* at 9.) Zaleski purportedly "altered the record when he changed the original [suppression] opinion" and "failed to give a full detailed description of Trooper Beyer's dash cam video thereby giving a misleading account of the total incident." (*Id.* at 10.) Miraldi allegedly conspired with the other Defendants, derailed Jackson's attempts "to obtain his *Brady* discovery," and denied Jackson's requests at trial to recall Beyer and Trader to the witness stand. (*Id.* at 10–11.) And as to Bradley, Aufdenkampe, and Mancino,

Jackson contends that he "does not have to prove that [they] were acting under the color of law pursuant to 42 U.S.C. §[§] 1981, 1983, 1985(3) and 1986, and 1988. Therefore [he] will need to address his claims [against them] separately from the other defendants in this complaint in State Court." (*Id.* at 11.)

Jackson's Objection lacks merit. He fails to plausibly allege that the troopers and attorneys engaged in a discriminatory activity enumerated in § 1981, deprived him of a constitutional right as required under § 1983, conspired with others to deprive him of the equal protection of the laws as required under § 1985, knew of and neglected to prevent a conspiracy as required under § 1986, or engaged in behavior that would subject them to liability under state law. He also fails to plausibly allege that the attorneys acted under the color of state law. And regarding the prosecutors and judges, Jackson's allegations fail to overcome their immunity and are, moreover, too threadbare and speculative to state a facially plausible claim.

### III.

For these reasons, the Court **OVERRULES** Jackson's Objection [ECF No. 41] and **ADOPTS AND AFFIRMS** the Magistrate Judge's Report and Recommendation [ECF No. 40] recommending that the Court grant Defendants' various dispositive motions [ECF Nos. 3, 8, 20, 21, 23, 27, 30, 33] and deny Jackson's motions for leave to amend and supplement the Complaint and obtain class action status [ECF No. 24] and freeze all Defendants' assets [ECF No. 26]. Plaintiffs' claims are, accordingly, **DISMISSED**, and the Clerk is **DIRECTED** to enter final judgment in this matter.

**IT IS SO ORDERED.**

9-18-2017
**DATE**

EDMUND A. SARGUS, JR.
CHIEF UNITED STATES DISTRICT JUDGE

8